CENTRAL MORTGAGE CO. v. PARTELLO.

(Supreme Court, Appellate Term.   December 22, 1911.)

1. BROKERS (§ 71*)—COMPENSATION—CONTRACT.
   If plaintiff, in consideration of $120, agreed to procure a loan for defendant, he is only entitled to that compensation upon procuring the loan, and not to the payment of the disbursements incurred.
   [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 56; Dec. Dig. § 71.*]

2. DAMAGES (§ 120*)—MEASURE—BREACH OF CONTRACT.
   Plaintiff's measure of damages for defendant's failure to accept a loan which plaintiff agreed to advance was the profit he lost by defendant's failure to accept the loan.
   [Ed. Note.—For other cases, see Damages, Cent. Dig. § 291; Dec. Dig. § 120.*]

3. CONTRACTS (§ 330*)—ACTIONS—PARTIES.
   Plaintiff sued to recover for services in procuring a loan for defendant, and as a second cause of action sued for a certain sum for the services of a firm of attorneys, which the complaint alleged defendant agreed with the firm to pay for such services, and which claim was assigned to plaintiff. *Held* to state no cause of action inasmuch as it sets

forth a special contract with plaintiff to pay a certain sum of money, though the assignor is apparently an absolute stranger to the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1589–1614; Dec. Dig. § 330.*]

Appeal from City Court of New York, Trial Term.

Action by the Central Mortgage Company against William Z. Partello. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before GIEGERICH, LEHMAN, and PENDLETON, JJ.

Francis Colety, for appellant.

Otis & Otis (A. Walker Otis, of counsel), for respondent.

LEHMAN, J. The plaintiff in its complaint sets forth two separate causes of action. In the first cause of action it alleges that the parties entered into an agreement in writing bearing date the 21st day of July, 1910, whereby the plaintiff agreed to procure for defendant two loans of $6,000 to be secured by mortgages to be made by defendant on certain real estate in the borough of the Bronx for which defendant agreed to pay plaintiff a commission of $120; that plaintiff duly performed said agreement on its part, but defendant failed to perform said agreement on his part; that, among other things, the defendant never acquired title to the real estate above referred to; that in procuring the moneys with which to make the said loans plaintiff was obliged to and did pay interest to the parties furnishing said moneys in the sum of $203. The second cause of action is upon an assigned claim of the firm of Otis & Otis for the sum of $485, which it is alleged that the defendant agreed to pay to the said firm for the examination of title.

The complaint is remarkable in several particulars. In the first cause of action it alleges, first, a breach of a contract to pay a commission for the *procuring* of two loans. Obviously the damages for this breach would be the amount of the commission of $120. It then alleges that it was put to expense "in procuring the moneys with which to make the said loans," and seeks to recover this sum in addition to the amount of its commissions. There is absolutely no allegation in the complaint showing that it had any authority to procure the *money to make* the loan. The complaint states that it was agreed that it was to procure two loans; in other words, to act as agent and to receive a commission for its services, and not to procure the moneys and make the loans as principal.

[1] Of course, if the complaint means that it was obliged to pay this interest in order to procure the loan, then the plaintiff is entitled to be paid only the sum which it was agreed should be paid for these services, viz., $120, and is not entitled to a further payment of the disbursements incurred in earning this amount. The second cause of action is remarkable because it sets forth a special contract to pay a sum of money to the plaintiff's assignor, although the assignor is apparently an absolute stranger to the contract.

Upon these pleadings the case was tried, and the trial justice di-

rected a verdict for the plaintiff for the whole amount. In fairness to the trial justice it should be said that no objections were apparently made to the complaint, and, though I find nothing in the record to justify the result on the evidence, the parties who entered into a stipulation settling the case failed to include therein any exhibit introduced in evidence except the alleged written agreement. It is possible that if the record were complete there might be justification for the direction of the verdict, but the record presented to us seems to me to call for a reversal.

The plaintiff introduced in evidence the alleged agreement of July 21, 1910. This agreement is in the form of an application addressed to the plaintiff by the defendant to procure for him two separate loans of $6,000 each, and at the foot thereof occur the words:

"Accepted July 21st, 1910.
"Central Mortgage Company,
"By Walker L. Otis, Vice President."

The paper in no place recites that the Central Mortgage Company is to make the loan itself with borrowed money; but, reading the paper as a whole, in the light of all the surrounding circumstances, it seems to me that it is probable that it was the intent of the parties that the Central Mortgage Company was to have the right either to procure the loan or to make it direct. The plaintiff is therefore probably entitled to the sum of $120 which the defendant agreed to pay it and which apparently it would have earned if the defendant had good title to the premises which were to be mortgaged. On the other hand, I find that the plaintiff has shown no right to recover any interest paid to persons from whom it borrowed money in order to make this loan.

[2] Conceding, without deciding, that the defendant may have been apprised of the fact that plaintiff was accepting the loan for itself, and that defendant agreed to borrow the money from the plaintiff, the damages which plaintiff suffered are the loss of profit which it would have made if the defendant had carried out its agreement. There is, however, no proof of such general damages, and no such damages are claimed and awarded. Nor can this payment of interest be considered special damages within the contemplation of the parties, since there is no proof that defendant understood that the plaintiff would borrow any money for this purpose, especially since the alleged agreement provides for a first payment on the loan only at some indefinite time in the future when the buildings to be erected were inclosed and the window frames in place. The plaintiff maintained the right to cancel the application if the defendant failed to complete said buildings to the point necessary for the inclosure payment and to tender the bond and mortgage within 90 days of the signing of the application, and there is no evidence in the record that the parties ever intended that the defendant would borrow and keep on hand the amount of a loan on buildings for which no plans had yet been filed when the whole amount would become due only when the buildings were completed. The plaintiff's attorney in his brief seems to urge that the plaintiff had a right to terminate the applica-

tion under the 90-day clause and then sue for its disbursements upon some theory of implied contract. Aside from the fact that there is absolutely no evidence of any such termination nor any appropriate allegation in the pleadings, the plaintiff cannot sue both for the agreed commission under the contract and under an implied contract for its disbursements, even if these disbursements had been reasonably necessary.

[3] In regard to the claim made in the second cause of action for the agreed price of services rendered by the attorneys, the respondent presents no statement of the theory upon which they have sued upon a contract to which they were strangers, nor any authority for such an action. It might well be that under this agreement the plaintiff had authority to employ these counsel and to agree as agent of the defendant that the defendant would pay the counsel the agreed price. It is also quite probable, since the written agreement was actually signed by one of the counsel who was also the vice president of the plaintiff, that a further implied contract may have been made directly with him by the defendant, but no such facts were either pleaded or proved, and such a parol implied agreement rests only on speculation.

Judgment should therefore be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.